UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TED JOHNSON,                              **REPORT,**
                                          **RECOMMENDATION and**
                                          **ORDER**

                          Plaintiff,      12-CV-00343(S)(M)

v.

BRIAN FISCHER, et al.,
                          Defendants.
_____

      This case was referred to me by Hon. William M. Skretny for supervision of all

pretrial proceedings, including the preparation of a Report and Recommendation on dispositive

motions [16].[1]  Before me are defendants' motions to dismiss [15, 21] pursuant to Fed. R. Civ. P.

("Rule") 12(b)(6), and to vacate the default entered against defendant Dale Artus [28],[2] pursuant

to Rule 55, as well as plaintiff's motion to deny and/or strike defendants' motions to

_____

[1]      Bracketed references are to the CM/ECF docket entries.

[2]      "Upon entry of default, the court accepts the factual allegations of the complaint as true,
except the allegations relating to damages." JP Morgan Chase Bank, N.A. v. M/Y FORTUNA, 2013 WL
1148920, *4 (E.D.N.Y.), adopted 2013 WL 1195420 (E.D.N.Y. 2013). Thus, the entry of a default, if not
set aside, may be dispositive of the issue of liability. Therefore, I consider defendants' motion to be
dispositive. *See* Mee Jin-Jo v. JPMC Specialty Mortgage LLC, 2009 WL 3672059, *1 n. 3 (W.D.N.Y.
2009), adopted 2010 WL 330314 (W.D.N.Y. 2010) (Arcara, J.). *Cf.* J & J Sports Productions, Inc. v.
Martinez, 2013 WL 2147790, *1 n. 2 (M.D.N.C. 2013) ("The entry of default (and thus the decision to
set aside or to leave in effect such an entry constitutes a pretrial matter that does not dispose of any claim
or defense").

dismiss [26], pursuant to Rules 11 and 12.  For the following reasons, plaintiff's motion is

denied, and I recommend that defendants' motion to vacate the entry of default be granted, and

that their motions to dismiss be granted in part and denied in part.


## BACKGROUND

Plaintiff, a former  inmate in the custody of the New York State Department of

Corrections and Community Supervision  ("DOCCS"), commenced this action *pro se*, pursuant

to 42 U.S.C. §1983. Complaint [1].  In or about 2009, while incarcerated at the Gowanda

Correctional Facility, plaintiff filed a grievance against defendant K. Adams,[3] a counselor with

the Sex Offender Treatment Program ("SOTP"), which was sustained and resulted in Adams

being reprimanded.  Id., ¶¶2, 6, 24.  After this incident, plaintiff was released on parole.  In or

about January 2011 his parole was revoked and he was returned to Gowanda, where he was

required to participate in the SOTP.  Id., ¶¶25-28.


### May 16, 2011 Incident

Plaintiff alleges that, during a May 16, 2011 mandated meeting with Adams and

defendant Cortnie Tietz, also a SOTP counselor, they "prepared a false and defamatory

Treatment Progress Report that falsely stat[ed] that Plaintiff made threats of violence towards

[Probation Officer ("PO")] Festa".  Id., ¶¶30-31.

---

[3]	Neither defendant Adams' first name nor the subject of the grievance is contained in the
Complaint.

Plaintiff filed a grievance regarding this incident.  His attorney, Edward Land, Esq., also filed a grievance on plaintiff's behalf with defendant Dale Artus, the Superintendent of Gowanda, and with defendant Lori Kellner, the supervisory SOTP Counselor.  Id., ¶¶4, 8, 33, 45.  On June 7, 2011 plaintiff received a response to his grievance from defendant James Hessell,[4] the Deputy Superintendent of Gowanda, which allegedly falsely stated that plaintiff had "a history of violent behavior associated with Parole employees".  Id., ¶¶5, 34.  Plaintiff alleges that at Land's request, Hessell's  June 7, 2011 letter was removed from plaintiff's institutional record in July 2011.  Id., ¶¶36-37.  Hessell also advised Land on June 16, 2011 that it was determined that plaintiff had engaged in no misconduct on May 16, 2011.  Id., ¶35.  However, Kellner "failed and refused to correct [the false report of the May 16, 2011 incident] or [to] discipline . . .  Adams and Tietz for their deliberate misconduct".  Id., ¶45.

According to plaintiff,  DOCCS' "employees at Gowanda have  improperly retaliated against [him] . . . by proffering Tier II and III tickets based on false allegations" because he "prevailed in his grievance with respect to the May 16, 2011 incident".  Id., ¶38.

### June 28, 2011 Incident

Plaintiff alleges that he was served with a Tier II ticket on June 29, 2011, based upon a misbehavior report which falsely charged him with leaving a June 28, 2011 SOTP meeting conducted by Adams and Tietz without permission.  Id., ¶¶39-43.  Land filed grievances on plaintiff's behalf  arising from the June 29, 2011 Tier II ticket.  Id., ¶44.

---

[4]        Defendants refer to him as both Hessel (*see* Notice of Motion [15]) and Hessell.

A grievance hearing on the June 29, 2011 Tier II ticket was held on July 8, 2011 before defendant Kolpack.[5] Id., ¶¶9, 46.  Although Kolpack found plaintiff guilty of an infraction, he imposed no penalties.  Id., ¶¶46-47.

### The July 26, 2011 Incident

Plaintiff alleges that in retaliation for his grievance with respect to the May 16, 2011 incident and because no punishment was imposed at the July 8, 2011 disciplinary hearing, on July 26, 2011 his inmate locker was searched.  Id., ¶¶49-51.  The search  located a slice of meatloaf, which plaintiff had taken from the messhall with the oral permission of a messhall employee.  Id., ¶51.  Nevertheless, plaintiff was issued a Tier II ticket charging him with smuggling, refusing a direct order and property damage.  Id., ¶52.  Kolpack presided over the disciplinary hearing (id., ¶54) at which plaintiff presented undisputed testimony that he had permission to remove the meatloaf from the messhall.  Notwithstanding this undisputed testimony, plaintiff was found guilty on all charges, and an "extremely excessive" penalty of 30 days confinement in the Special Housing Unit ("SHU") was imposed.  Id., ¶¶55-56.

### August 16, 2011 Incident

Plaintiff alleges that toward the completion of his SHU confinement, defendant Correction Officer Steven O'Donnell issued a false Tier III ticket alleging that on August 16, 2011,  plaintiff threw back his food tray causing food to spill on O'Donnell and yelled "I'm not going to eat this shit".  Id., ¶¶59-60. Thereafter, Hessell and defendant Edgar Bangsil, M.D.,

---

[5]        Plaintiff incorrectly spells his name.

Gowanda's Health Services Director, executed an order restricting plaintiff's diet to frozen bread and water, which was removed four days later by a nurse, who was concerned that plaintiff had lost too much weight while on the restricted diet.  Id., ¶¶61, 64-65.

Following a disciplinary hearing before defendant Deborah Eaton, who formerly worked as an SOTP Counselor with Adams and Tietz, plaintiff was "summarily adjudicated to be guilty of the trumped up charges" and a penalty of additional six months of SHU confinement was imposed.  Id., ¶69.

Between August 16, 2011 and his release from SHU confinement on January 27, 2012, plaintiff filed numerous grievances and Land sent letters to Artus and defendant Brian Fischer, DOCCS' Commissioner, complaining of the unlawfulness of the charges and restricted diet.  Id., ¶¶71-72.  However, the only response received from Commissioner Fischer was from "his underling", Deputy Commissioner Lucien LeClaire, who advised that the grievances were being considered.  Id., ¶73.

**Plaintiff's Transfer to Collins Correctional Facility**

In September 2001, plaintiff was transferred to Collins Correctional Facility to complete his SHU confinement.  Id., ¶75.  Plaintiff alleges that this was arranged by Superintendent Artus to prevent the appointment of court monitor to protect him from further acts of retaliation.  Id., ¶75.

Notwithstanding the transfer, plaintiff alleges that the harassment and retaliation "continued at Collins but to a somewhat lesser extent". Id., ¶76.[6]  In December 2011, Malcolm Cully, the Superintendent of Collins, reduced plaintiff's sentence of SHU confinement by 45 days, which plaintiff alleges was done to bring his total confinement under the threshold set by the Second Circuit for cruel and unusual punishment. Id., ¶77.

As a result of this alleged conduct, plaintiff asserts the following causes of action:[7]

■   First -  Plaintiff alleges that his placement in "SHU for having a slice of meatloaf in his inmate locker, and the extension of [his] SHU time to nearly six month upon false charges that [he] violently thrust a food tray at Defendant O'Donnell and yelled profanity" was "in retaliation for having previously filed grievances against Defendants Adams and Tietz in May 2011" in violation of the First and Fourteenth Amendments. Id., ¶81.

■   Second - Plaintiff alleges that his "[p]lacement for nearly six months upon the basis of false and defamatory charges of inmate misconduct on July 26, 2011 and August 15, 2011 amounts to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments". Id. ¶86.

---

[6]      It is unclear how the current defendants are responsible for any of the alleged retaliation plaintiff experienced at Collins.

[7]      Unrelated to the cause of action asserted, plaintiff's Complaint [1] contains a lone allegation that "[a]s recently as March 2012", unidentified DOCCS' employees at Coxsackie have denied him his First Amendment right to the exercise of religion "by preventing him from attending weekly Jehovah's Witness meetings". Id., ¶79.

■    Third - Due Process violation against Hearing Officer Eaton for failing to permit plaintiff to present character witnesses at his disciplinary hearing and for basing her determination on hearsay.  Id., ¶¶90-91.

■    Fourth - This claim is difficult to discern. While defendants characterize it as alleging "'false imprisonment' for deprivation of due process, apparently against all the named defendants" (defendants' Memorandum of Law [15-1], p. 6 (*citing* Complaint [1], ¶101)), it also appears to allege supervisory claims against Hessell, Artus and Fischer.  *See* Complaint [1], ¶¶101-02.[8]

All defendants except Adams and Artus initially moved to dismiss the Complaint [15], followed by a similar motion by Adams several weeks later [21].  In opposition to defendants' motions to dismiss, plaintiff submitted an Affidavit in Support of Proposed Findings of Uncontroverted Facts [24][9] and a Notice of Motion to "[t]o deny and/or strike" defendants' motions to dismiss [26].

Although an Acknowledgment of Service was received by Artus on April 25, 2013 [14], he did not respond  to the Complaint.  Consequently, plaintiff obtained a Clerk's entry of default against him on August 8, 2013, which Artus has moved to vacate [28].

---

[8]    Other than plaintiff's Third Cause of Action, which is alleged against Eaton, it is difficult to discern whether the other causes of action are similarly limited to certain defendants or are alleged against all defendants.

[9]    Although plaintiff's response [24] attaches a number of exhibits (id., pp. 16-91 of 91),  I have not considered these in resolving defendants' motions to dismiss, which are based on the facial sufficiency of the allegations  in plaintiff's Complaint.

**ANALYSIS**

**A.    Plaintiff's Motion to Deny and/or Strike Defendants' Motions to Dismiss**

Relying on Rule 12(b)(2), plaintiff moves to strike defendants' motions to dismiss "as insufficient" for failing to "file a proper and true motion".  Plaintiff's Declaration [26], ¶1. Although plaintiff relies upon Rule 12(b)(2), which addresses a dismissal for lack of personal jurisdiction, I believe that he intended to reference Rule 12(f), which addresses motions to strike. However, Rule 12(f) only permits a court to strike a "pleading".  Since "[d]efendants' motions to dismiss are not pleadings, . . .  Plaintiff cannot properly strike portions of the Attorney Defendants' motions to dismiss".  Spiteri v. Russo, 2013 WL 4806960, *64 (E.D.N.Y. 2013) (citing cases).  In any event, even if Rule 12(f) did permit plaintiff to move to strike,  plaintiff points to no specific deficiency with defendants' motions to dismiss to warrant striking the motions in whole or in part.

Relying on Rule 11, plaintiff also seeks to deny defendants' motions to dismiss, arguing that there was "no 'due Diligence to attain or to rely on the 'true facts' of this case". Plaintiff's Declaration [26], ¶4.  Since resolution of defendants' motions turn on the facts as alleged in the Complaint, rather than the facts as alleged by defendants, I conclude that there is no basis to deny defendants' motions under Rule 11.

While I deny plaintiff's motion to deny and/or strike, to the extent that motion also raises arguments in opposition to defendants' motions to dismiss, I will consider it as part of plaintiff's opposition to defendants' motions to dismiss.

**B.        Defendants' Motions to Dismiss**

"When, as here, the complaint is filed by a *pro se* plaintiff, we construe the complaint liberally, interpreting it to raise the strongest arguments that it suggests." Caro v. Weintraub, 618 F.3d 94, 97 (2d Cir. 2010).  Moreover, "the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated".  Branum v. Clark, 927 F.2d 698, 705 (2d Cir.1991).

"Notwithstanding this rule, however, even when a plaintiff is proceeding *pro se*, all normal rules of pleading are not absolutely suspended." Johnson v. Connolly, 2008 WL 724167, *6 (N.D.N.Y. 2008).  Thus, where the problem with plaintiff's complaint is "substantive [and] better pleading will not cure it", leave to replead should be denied.  Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).  Moreover, leave to amend is "taken very seriously and with consideration that the Court need not allow unlimited efforts to state a claim".  Henry v. Cuomo, 2008 WL 489258, *3 (W.D.N.Y. 2008) (Telesca, J.).

Although defendants move to dismiss the Complaint in its entirety, their motion is directed at only the personal involvement of Fischer and Kellner and the First Cause of Action alleging retaliation against  certain defendants, and the Third Cause of Action.

**1.        Personal Involvement of Fischer and Kellner**

"Proof of an individual defendant's personal involvement in the alleged wrong is . . . a prerequisite to his liability on a claim for damages under §1983." Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001).  Prior to Ashcroft v. Iqbal, 556 U.S. 662 (2009), it had been well settled that "[t]he personal involvement of a supervisory defendant may be shown by

evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring."  Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).  However, in Iqbal, the Supreme Court clouded this issue when it rejected the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution", concluding that "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  556 U.S. at 677.

    Since Iqbal, some districts courts have determined that not all five of Colon's categories of conduct that may give rise to supervisory liability remain viable.  See e.g., Spear v. Hugles, 2009 WL 2176725, *2 (S.D.N.Y. 2009) ("only the first and third Colon factors have survived the Supreme Court's decision in Iqbal" ); Bellamy v. Mount Vernon Hospital, 2009 WL 1835939, *6 (S.D.N.Y. 2009), aff'd, 387 Fed. Appx. 55 (2d Cir. 2010) (Summary Order) ("The Supreme Court's decision in Iqbal v. Ashcroft abrogates several of the categories of supervisory liability enumerated in Colon v. Coughlin.  Iqbal's active conduct standard only imposes liability on a supervisor through section 1983 if that supervisor actively had a hand in the alleged constitutional violation.  Only the first and part of the third Colon categories pass Iqbal's

-10-

muster")[10]; <u>Bryant v. County of Monroe</u>, 2010 WL 4877799, *3 (W.D.N.Y.2010) (Siragusa, J.)

("The Court . . . is persuaded by the analysis of . . . <u>Iqbal</u> . . . in <u>Bellamy</u>").[11]   However, I need not

resolve this conflict, since plaintiff fails to satisfy any of the <u>Colon</u> factors.

### a.     Fischer

Although plaintiff alleges that letters were sent to Fischer complaining of the

defendants' conduct, he concedes that the only response received to these letters was from

LeClaire, his subordinate, advising him that his grievances were being considered.   Complaint

[1], ¶73.  This in not sufficient to establish Fisher's personal involvement.  "The receipt of a

prisoner's letter of grievance by a DOCS Commissioner who delegates to other prison officials

the task of responding to such complaints is insufficient to establish the Commissioner's personal

involvement." <u>Spavone v. Fischer</u>, 2012 WL 360289, *5 (S.D.N.Y. 2012).  *See* <u>Grieco v.</u>

<u>Fischer</u>, 2013 WL 5488905, *5  (W.D.N.Y. 2013) (Skretny, J./Schroeder, M.J.) ("the Court finds

plaintiff's allegations that he copied Commissioner Fischer on letters of complaint about his diet

and that Commissioner Fischer directed [others] to respond to plaintiff's letters, insufficient to

---

[10]       "[T]he <u>Iqbal</u> issue was not raised on appeal" in <u>Bellamy</u>.  <u>Stresing v. Agostinoni</u>, 2012
WL 2405240, *4 (W.D.N.Y. 2012) (Skretny, J.).

[11]       Adding to the uncertainty, "[t]he Second Circuit has not yet addressed which, if any, of
the <u>Colon</u> categories survive <u>Iqbal</u>." <u>Jamison v. Fischer</u>, 2012 WL 4767173, *4  (S.D.N.Y. 2012). *See*
<u>McDonald v. Smith</u>, 2013 WL 7044723, *5 (W.D.N.Y. 2013) (Scott, M.J.), <u>adopted</u> 2014 WL 223652
(W.D.N.Y. 2014) (Arcara, J.).

establish personal involvement"). Therefore, I recommend that the claims against Fischer be dismissed, without prejudice.

       **b.**    **Kellner**

       The allegations against Kellner stem from her supervisory status.  Plaintiff alleges that she "failed and refused" to discipline Adams and Tietz for the May 16, 2011 misbehavior report.  Complaint [1], ¶45.  However, "the allegation that a supervisory official ignored a prisoner's letter protesting unconstitutional conduct is not itself sufficient to allege the personal involvement of the official so as to create liability under §1983".  Amaker v. Fischer, 2013 WL 6092501, *5 (W.D.N.Y. 2013) (Arcara, J./Schroeder, M.J.).  See Bearam v. Sommer, 2013 WL 5405492, *7 (S.D.N.Y. 2013) ("Although personal liability will not be found for mere receipt of a prisoner's letters or complaints, personal involvement will be found where a supervisory official receives and acts on a prisoner's grievance (or substantively reviews and responds to some other form of inmate complaint) under the second [Colon] prong"); Excell v. Woods, 2009 WL 3124424, *21 (N.D.N.Y. 2009) ("A prisoner's allegation that a supervisory official failed to respond to a grievance is insufficient to establish that the official failed to remedy that violation after learning of it through a report or appeal or exhibited deliberate indifference by failing to act on information indicating that the violation was occurring"); Argue v. Burnett, 2010 WL 1417633, *6 (W.D.Mich. 2010) ("it is not enough for Argue to allege merely that these eight defendants were aware of Burnett's actions and failed or refused to correct them").  Therefore, I recommend that the claims against Kellner be dismissed, without prejudice.

2.    **Retaliation Claim**

"To prove a First Amendment retaliation claim under Section 1983, a prisoner must show that '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.' " Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009).

Defendants argue that retaliation claim fails in its entirety "due to the fact that he often fails to name a particular defendant as the instigator of the retaliation (i.e. Compl. ¶¶ 76, 78, 81, 98, and 102) or fails to allege facts sufficient to show retaliation (i.e. Compl. ¶ 38, 49, and 64)." Defendants' Memorandum of Law [15-1], p. 10.  Although plaintiff's Complaint is not a model of clarity, at this stage and liberally interpreting the Complaint,  he has sufficiently alleged a series of retaliatory acts emanating from the grievances he filed against Adams and Tietz in May 2011.  Complaint [1], ¶81.

More persuasively, defendants specifically challenge  the causal connection between the retaliatory acts allegedly committed by defendants Tietz, O'Donnell, Dr. Bangsil, and Hessell and plaintiff's grievances against Adams and Tietz. Defendants' Memorandum of Law [15-1], p. 12.  In evaluating whether such a causal connection exists, " a court may infer an improper or retaliatory motive in the adverse action from: (1) the temporal proximity of the filing to the grievance and the disciplinary action; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant regarding his motive for disciplining the plaintiff."  Shariff v. Poole,  689 F.Supp.2d 470, 479 (W.D.N.Y. 2010) (Siragusa, J.). See Guillory v. Boll,  2013 WL 5304194, *7  (N.D.N.Y. 2013).

###### a.    Tietz

Defendants raise a number of arguments in support of dismissal of plaintiff's retaliation claims against Tietz.  First, they argue that plaintiff admits to the truth of the misbehavior report in that he concedes that he left the June 28, 2011 session before it concluded.  Defendants' Memorandum of Law [15-1], p. 12.  I agree with defendants that "[w]here a prisoner's own allegations include an admission of the conduct alleged in a misbehavior report . . . he cannot state a retaliation claim and any such claim should be dismissed".  Salvatierra v. Connolly, 2012 WL 996944, *12 (S.D.N.Y.), adopted 2012 WL 1003562 (S.D.N.Y. 2012).  However, liberally interpreting plaintiff's Complaint, he alleges that he had Tietz's tacit approval to leave the session.  For example, plaintiff alleges that Tietz *"was well aware* that Plaintiff had to leave the meeting in order to go to the Law Library . . . and that a CO told Plaintiff that he must go to the Law Library at 12:30 PM".  Complaint [1], ¶41 (emphasis added).  Tietz also did nothing to prevent him from leaving the session.  Id., ¶¶42-43.

Defendants further argue that the six-week gap between the filing of plaintiff's grievance for the May 16, 2011 incident and the alleged retaliatory filing of the misbehavior report from the June 28, 2011 incident is too attenuated to establish retaliation.  Defendants' Memorandum of Law [15-1], p. 12.  I disagree.  Plaintiff alleges that he was retaliated against because he prevailed on his May 16, 2011 grievance and that he prevailed on this grievance "just thirteen days" before the June 29, 2011Tier II ticket was issued.  Complaint [1], ¶¶38-39.  In any event, even if I rely on the six week period between plaintiff's May 16, 2011 grievance and the misbehavior report from the June 28, 2011 incident, this temporal relationship is not too attenuated to support an inference of a causal connection.  *See* Espinal v. Goord, 558 F.3d 119,

129 (2d Cir. 2009) ("we find that the passage of only six months between the dismissal of

Espinal's lawsuit and an allegedly retaliatory beating by officers, one of whom . . . was a

defendant in the prior lawsuit, is sufficient to support an inference of a causal connection").

Defendants further argue that plaintiff fails to allege that he was vindicated at a

hearing on the alleged retaliatory charges lodged by Tietz and fails to allege any statements by

Tietz revealing her retaliatory motive.  Defendants' Memorandum of Law [15-1], p. 12.  Neither

argument is persuasive.  Although plaintiff concedes that he was found guilty following a hearing

for leaving the June 28, 2011 session without permission, he alleges that he partially prevailed by

the fact that no penalties were imposed.  Complaint [1], ¶¶46, 47.

Moreover, "where circumstantial evidence of a retaliatory motive is sufficiently

compelling, direct evidence is not invariably required."  Bennett v. Goord, 343 F.3d 133, 139 (2d

Cir. 2003).  Thus, while the Complaint does not allege any statements by Tietz directly

evidencing a retaliatory motive for her conduct, the close temporal proximity to when plaintiff

prevailed on his grievance arising from the May 16, 2011 incident, coupled with the fact that

plaintiff partially prevailed on the June 29, 2011 charges, is sufficient at this stage to state a

retaliation claim against Tietz.  Therefore, I recommend that the claims against Tietz not be

dismissed.

### b.       O'Donnell

Defendants argue that this claim is deficient since plaintiff fails to allege that

O'Donnell knew of his May 16, 2011 grievance, which was filed three  months before his

allegedly retaliatory conduct.  Defendants' Memorandum of Law [15-1], p. 13.  They further

argue that plaintiff fails to allege that he was vindicated on the charges brought by O'Donnell or that O'Donnell made statements evidencing his retaliatory motivations.  Id. I agree with defendants.

Plaintiff's Complaint appears to allege that O'Donnell's August 16, 2011 Tier III ticket was prompted by the grievances he filed concerning the May 16, 2011 incident with Adams and Tietz (Complaint [1], ¶81), and also as "further retaliation for the grievances filed by Plaintiff and Land, who wrote repeatedly to Defendants Fischer and Artus . . . regarding his improper placement in the SHU on August 4, 2011".  Id., ¶64.  However, absent from plaintiff's Complaint is any allegation that O'Donnell was aware of, or had any connection to,  plaintiff's grievance against Adams and Tietz, to plaintiff's grievances concerning his placement in SHU on August 4, 2011, or to any other of plaintiff's grievances.  See Thaxton v. Simmons, 2012 WL 360104, *8 (N.D.N.Y.), adopted, 2012 WL 360141 (N.D.N.Y. 2012) ("Plaintiff's claims of retaliation against Defendants Bush and Doe are nothing more than conclusory, and, in light of the factual allegations, implausible. Plaintiff believes that Defendants Bush and Doe contaminated his kosher food tray on April 28th as retaliation for the grievances he filed against Defendant Simmons on January 13th and April 9th.  But he provides the Court with no plausible connection between the protected activity and the allegedly adverse conduct nor any plausible connection between Defendants Bush and Doe and Simmons").

Other than the temporal proximity between plaintiff's grievances and the alleged retaliatory conduct by O'Donnell (ranging from approximately 3 months to 12 days), plaintiff offers no specific allegations to allow me to infer an improper or retaliatory motive for the Tier III ticked issued by O'Donnell. See Johnson v. Schiff,  2013 WL 5466218, *14 (N.D.N.Y.),

-16-

<u>adopted</u> 2013 WL 5466638 (N.D.N.Y. 2013) (holding that where timing is the only basis for a claim of retaliation, an inference of retaliation does not arise).  Therefore, I recommend that plaintiff's retaliation claims against O'Donnell be dismissed, without prejudice.

          **c.**       **Dr. Bangsil**

Dr. Bangsil, along with Hessell, is alleged to have signed the August 16, 2011 order placing him on a restricted diet. Complaint [1], ¶61.  Defendants argue that plaintiff fails to allege that he previously grieved Dr. Bangsil or that he was aware of his grievances, that he was vindicated at a hearing, or that he made any statements that would indicate that he had a retaliatory motive.  Defendants' Memorandum of Law [15-1], p. 13.  I agree with defendants.

Similar to the allegations against O'Donnell, plaintiff alleges that the restricted diet order was issued as "further retaliation for the grievances filed by Plaintiff and Land, who wrote repeatedly to Defendants Fischer and Artus . . . regarding his improper placement in the SHU on August 4, 2011. <u>Id.</u>, ¶64.  Although the restricted diet order presumably followed shortly after his grievances concerning his August 4, 2011 placement in SHU and was removed days after it was imposed because plaintiff had lost too much weight (Complaint [1], ¶61), there is no allegation of Dr. Bangsil's connection to or awareness of plaintiff's grievances concerning his August 4, 2011 placement in SHU.  Therefore, I recommend that plaintiff's retaliation claims against Dr. Bangsil be dismissed, without prejudice.

### d.    Hessell

Hessell is also alleged to have retaliated against plaintiff by signing the restricted

diet order for his grievances to Fischer and Artus concerning his placement in SHU on August 4,

2011. Complaint [1], ¶¶61, 64.  However, as with Dr. Bangsil, there is no allegation of Hessell's

connection to or awareness of the grievances plaintiff made concerning his August 4, 2011 SHU

confinement.  Therefore, I recommend that this aspect of plaintiff's Complaint against Hessell be

dismissed without prejudice.[12]


### 3.    Due Process Violations Against Kolpack and Eaton

### a.    Dismissal Under Heck v. Humphrey, 512 U.S. 477 (1994)

Defendants argue that "[w]hile the plaintiff does not specify which of the two

disciplinary hearings . . . resulted in a loss of good time, he clearly alleges that he lost good time

as a result of one of these hearings, and asks to have it restored".  Defendants' Memorandum of

Law [15-1], p. 17. Thus, "[t]o the extent that . . . he has properly alleged due process violations

for either of these hearings, the claims still must be dismissed pursuant to Heck v. Humphrey".

Id.

"[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must

consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his

conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can

---

[12]    Plaintiff also appears to allege that many of the defendants were acting under Hessell's
supervision and that all of  the alleged conduct he experienced was "supervised and approved" by
Hessell. Complaint [1], ¶¶101-02.  These allegations, which are not specifically addressed by defendants'
motion, remain.

demonstrate that the conviction or sentence has already been invalidated." Heck v. Humphrey, 512 U.S. 477, 487 (1994). "Heck's favorable termination rule applies to challenges made under §1983 to procedures used in disciplinary proceedings that deprived a prisoner of good-time credits." Peralta v. Vasque, 467 F.3d 98, 103 (2d Cir. 2006), cert. denied, 551 U.S. 1145 (2007) (*citing* Edwards v. Balisok, 520 U.S. 641 (1997)). *See* Nimmons v. Fischer, 2013 WL 4495006, *8 (W.D.N.Y. 2013) (Arcara, J./Foschio, M.J.) ("Heck has been applied to an action challenging procedural defects at a prison disciplinary proceeding at which an inmate's good time credits were revoked").

Thus, "when an inmate loses good time as a result of a disciplinary hearing, and a favorable decision on his due process challenges would necessarily result in the invalidity of that punishment, the court cannot consider a claim for damages on the issue until plaintiff proves that the determination has been reversed on direct appeal, by executive order, by a state tribunal, or by a petition for habeas corpus". Liner v. Fischer,  2010 WL 3808692, *5 n.8 (N.D.N.Y.), adopted 2010 WL 3808695 (N.D.N.Y. 2010). *See* Strasser v. New York, 2012 WL 253391, *2 (N.D.N.Y. 2012) ("Sanctions that include the loss of good-time credits toward release . . . affect the length of confinement"). "This rule applies even when . . . the inmate is given a 'mixed sanction,' involving both loss of good time and more restrictive conditions of confinement such as an SHU penalty." Id. "[A] prisoner subject to such mixed sanctions can proceed separately, under §1983, with a challenge to the sanctions affecting his conditions of confinement without satisfying the favorable termination rule, *but that he can only do so if he is willing to forgo once and for all any challenge to any sanctions that affect the duration of his confinement*. In other words, the prisoner must abandon, not just now, but also in any future proceeding, any claims he

-19-

may have with respect to the duration of his confinement that arise out of the proceeding he is

attacking in his current § 1983 suit." <u>Peralta</u>,  467 F.3d at 104 (emphasis in original).

Although plaintiff does not expressly allege that a loss of  good time credit was

imposed as a result of the disciplinary hearings, he seeks reinstatement of  "all the good time

credit he is entitled to by law for each and every day he was wrongly confined in the SHU".

Complaint [1], ¶¶84, 93(d).  "Because Plaintiff has included a loss of good time allegation in

his . . . Complaint, whether intended or not, he must show that the challenged determination of

guilt in his disciplinary hearing has been reversed, declared invalid, or otherwise favorably

terminated in order to pursue a claim for damages related to the duration of his confinement."

<u>Paulino v. Fischer</u>,  2013 WL 5230264, *6  (N.D.N.Y. 2013).  Plaintiff has not done so.

Therefore, I recommend that plaintiff's due process claims against Kolpack and

Eaton be dismissed,[13] without prejudice to filing an Amended Complaint clarifying that no loss

of good time credit was imposed as a result of one or both or disciplinary hearings or submission

of a written acknowledgment that he is willing to forego any current or future challenge to the

loss of good time credit.

In the event that this recommendation is determined to be erroneous, and to guide

the parties in the event plaintiff proceeds with his due process claims, I offer the following

analysis of defendants' remaining arguments.

---

[13]     I recommend that only the due process claims against these defendants be dismissed,
since plaintiff also alleges that their conduct was in retaliation for having filed grievances against Adams
and Tietz in May 2011.  Complaint [1], ¶81.  These claims, which are not addressed by defendants'
motion, remain pending.

b.    Kolpack[14]

Defendants argue that the due process violations arising from the disciplinary hearing Kolpack presided over must be dismissed since the 30 days of SHU confinement imposed as a result of this hearing does not establish an atypical and significant hardship, he admits that he was guilty of the charge, and fails to allege any specific due process that he was deprived of at the hearing.  Defendants' Memorandum of Law [15-1], pp. 14-15.

 "When a prison disciplinary hearing may impose a punishment sufficient to trigger due process protections, the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action . . . . In addition, due process requires 'that there be some evidence to support the findings made in the disciplinary hearing."  Washington v. Gonyea,  538 Fed.Appx. 23, 2013 WL 4792413, *1 (2d Cir. 2013) (Summary Order).

Plaintiff alleges that he was adjudicated guilty on all charges "even though [he] presented undisputed testimony that he had permission of a DOCS' employee to remove the slice of meatloaf from the mess hall".  Complaint [1], ¶55.  Giving plaintiff every favorable inference, he appears to allege that there was no evidence to support Kolpack's determination.  Appearing to also challenge whether he had sufficient notice of the charges against him, plaintiff alleges that "the inmate misbehavior report upon which the Tier II ticket was based did not set for the direct

---

[14]    Although  the Third Cause of Action appears to be alleged only against Eaton (Complaint [1], ¶¶90-91), defendants' motion interprets  the Complaint as alleging a due process claim against Kolpack as well.

order [he] was charged with disobeying, nor did it set forth the property Plaintiff was charged

with damaging".  Complaint [1], ¶52.  *See* <u>Benitez v. Wolff</u>,  985 F.2d 662, 665 (2d Cir. 1993)

("The notice requirement is no mere formality").

   I also disagree with defendants that plaintiff admits his guilt.  While plaintiff

concedes that he took food from the messhall, he alleges that he did so "with the express

permission of a mess hall employee" and "in full view of at least one CO".  Complaint [1], ¶51.

Moreover, apart from smuggling, plaintiff was charged with refusing a direct order and property

damage, but he makes no express or implied concession as to these charges in the Complaint.

   More persuasive is defendants' argument that plaintiff has not established an

atypical hardship with respect to the 30 days of SHU confinement he received.  The threshold

issue on any procedural due process claim involving an inmate "is always whether the plaintiff

has a property or liberty interest protected by the Constitution".  <u>Narumanchi v. The Board of</u>

<u>Trustees of the Connecticut State University</u>, 850 F.2d 70, 72 (2d Cir.1988).  To establish a

protected liberty interest, a prisoner must satisfy the standard set forth in <u>Sandin v. Conner</u>, 515

U.S. 472, 483–84 (1995).  To meet this standard, an inmate must establish that the "deprivation

is atypical and significant and the state has created the liberty interest by statute or regulation".

<u>Tellier v. Fields</u>, 280 F.3d 69, 80 (2d Cir. 2000).

   "Post- <u>Sandin</u>, the decisions in the Second Circuit are unanimous that keeplock or

SHU confinement of 30 days or less in a New York prison is not an atypical or significant

hardship under <u>Sandin</u>."  <u>Gssime v. Burge</u>, 2013 WL 3423816, 2  (W.D.N.Y. 2013) (Telesca, J.)

(citing cases).  Nevertheless, even confinements of this duration may constitute an atypical and

significant deprivation if the conditions experienced were more severe than those  normally

encountered in SHU.  *See* <u>Palmer v. Richards</u>, 364 F.3d 60, 65 (2d Cir. 2004); <u>Edelkind v.</u> <u>Killian</u>, 2011 WL 10599973, *16 (S.D.N.Y. 2011), <u>adopted</u> 2013 WL 1501633 (S.D.N.Y. 2013).

While serving his sentence of 30 days of SHU confinement, plaintiff alleges that on August 16, 2011 he was issued a restricted diet order causing him to be deprived of food for four days.  Complaint [1], ¶¶64-65.  Clearly, it would be atypical to be starved for four days. However, it is  not clear  whether this was imposed as a condition of his confinement in SHU or independently as a result of  the Tier III ticket issued by O'Donnell.  <u>Id</u>., ¶64.

   c.  **Eaton**

Defendants argue that the due process claim against Eaton must be dismissed since "plaintiff only alleges that she denied him character witnesses, that she relied on hearsay and that she violated New York law".  Defendants' Memorandum of Law [15-1], p. 16.

Plaintiff alleges Eaton "did not state why she was denying Plaintiff's request [for character witnesses] other than the fact that she never permits such witnesses".  Complaint [1], ¶68.  Even assuming that Eaton permissibly prohibited character witnesses from testifying on plaintiff's behalf  (*see, e.g.*, <u>Tafari v. McCarthy</u>, 714 F.Supp.2d 317, 377 (N.D.N.Y. 2010) ("Defendant['s] . . .  exclusion of hearsay testimony from an inmate not present during an incident was proper in that it excluded irrelevant and inadmissible evidence from the proceeding")), she was, as plaintiff argues (plaintiff's Declaration [26], ¶61) obligated to advise plaintiff why she was doing so.  *See* <u>LeBron v. Artus</u>, 2008 WL 111194, *10  (W.D.N.Y. 2008) (Bianchini, M.J.) ("When an inmate is precluded from obtaining certain witness testimony or

other evidence, due process requires that the inmate be provided reasons for the denial either at

the disciplinary hearing or at a later time").

Plaintiff also alleges that Eaton "summarily adjudicated Plaintiff to be guilty of

the trumped up charges" based upon "nothing but the rank hearsay" contained in "O'Donnell's

August 15, 2011 inmate misbehavior report", without requiring him to testify.  Complaint [1],

¶¶69-70.  "The hearing officer has no duty to cross-examine anyone, including the reporting

officer . . . . Rather, the requirement is that decisions on the disciplinary hearing level be made on

the basis of 'some evidence,' a standard that does not necessitate witness testimony."  Creech v.

Schoellkoph, 688 F.Supp.2d 205, 214 (W.D.N.Y. 2010) (Siragusa, J.).  However, even under the

"some evidence" standard , "the evidence in question must be reliable".  Id.  Giving plaintiff

every favorable inference, at this stage I am unable to conclude as a matter of law that Eaton's

decision was supported by a sufficient degree of reliable evidence.


**4.**      **Adams' Motion to Dismiss**

Defendants initially argue that "none of the plaintiff's four causes of action name

Adams as a defendant, which alone should cause the case against her to be dismissed".

Defendants' Memorandum of Law [21-1], p. 5.  While I agree that plaintiff's claims are not a

model of clarity, defendants themselves interpret the Complaint to allege that the "[d]efendant

Tietz, *along with defendant Adams*, . . . issued a MR to the plaintiff on June 29, 2011, as

retaliation for the May 18 grievance the plaintiff filed".  Defendants' Memorandum of Law [15-

1], p. 12 (emphasis added).

Defendants also argue that plaintiff's retaliation claim against Adams must be dismissed because he "clearly alleges that defendant Tietz, no[t] Adams, issued a Misbehavior Report to the plaintiff on June 29, 2011, as retaliation". Defendants' Memorandum of Law [21-1], p. 8. However, as discussed above, defendants have interpreted the Complaint as alleging that both Tietz and Adams were responsible for the June 29, 2011 misbehavior report. Defendants' Memorandum of Law [15-1], p. 12. In any event, while at points plaintiff alleges that Tietz authored the misbehavior report (*see, e.g.*, Complaint [1], ¶41), elsewhere he alleges that "Defendants and Tietz did . . . falsely report that Plaintiff left the meeting without permission". Id., ¶43. Thus, a liberal interpretation of plaintiff's allegations establishes that Adams was also responsible for the June 29, 2011 misbehavior report.

To the extent that plaintiff's claim against Adams is based on the false "Treatment Progress Report" he prepared alleging that plaintiff threatened PO Festa, defendants argue that this allegation fails to state a claim. I agree. "It is well-settled that a prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest . . . . The inmate must show something more, such as that he was deprived of due process during the resulting disciplinary hearing, or that the misbehavior report was filed in retaliation for the inmate's exercise of his constitutional rights." Velez v. Burge, 483 Fed.Appx. 626, 628 (2d Cir. 2012) (Summary Order). Plaintiff alleges neither a deprivation of due process, as there was no resulting disciplinary hearing from the Treatment Progress Report, nor that it was prepared as retaliation for plaintiff's exercise of his constitutional rights. Indeed, plaintiff specifically alleges that he experienced retaliation

"[s]ince June 27, 2011" and was "perpetrated because Plaintiff prevailed in his grievance with respect to the May 16, 2011 incident".  Complaint [1], ¶38.

Since plaintiff's Complaint alleges that the Treatment Progress Report was "defamatory" (Complaint [1], ¶30), defendants also argue that he has not stated a cause of action for defamation.  Defendants' Memorandum of Law [21-1], pp. 6-7.  I agree. "[U]nder limited circumstances, federal constitutional relief is available for defamation committed by government officials . . . .  Specifically, an action can be grounded in 42 U.S.C. §1983 when that plaintiff can demonstrate a stigmatizing statement plus a deprivation of a tangible interest."  Vega v. Lantz, 596 F.3d 77, 81 (2d Cir. 2010).  "To establish a 'stigma plus' claim, a plaintiff must show (1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights."  Id.

Plaintiff concedes that when he advised PO Fiesta that he did not make the alleged threats, "he was not penalized in any way".  Complaint [1], ¶32.  At most, he alleges that Treatment Progress Report resulted in him being "hauled into PO Festa's office and directed by two CO's to stand 'spread eagle' . . . and then patted down".  Complaint [1], ¶31. However, even "strip searches of inmates are constitutional as long as they are reasonable and not abusive".  Dingle v. Poland, 2004 WL 941778, *1  (W.D.N.Y. 2004) (Skretny, J.).  Plaintiff's allegations fall far short of establishing an unreasonable or abusive search.  Therefore, I recommend that defendants' motion be granted to the extent it seeks dismissal of the claims against Adams arising from the allegedly false and defamatory Treatment Progress Report, but otherwise be denied.

**C.      Defendants' Motion to Vacate the Entry of Default against Artus**

"The court may set aside an entry of default for good cause".  Rule 55(c).

"While Rule 55(c) does not define 'good cause,' this Court has advised district courts to consider

three criteria in deciding a Rule 55(c) motion: (1) whether the default was willful; (2) whether

setting aside the default would prejudice the party for whom default was awarded; and (3)

whether the moving party has presented a meritorious defense." Peterson v. Syracuse Police

Department, 467 Fed.Appx. 31, 33 (2d Cir. 2012) (Summary Order).  "A finding that one factor

militates against good cause is not dispositive." Murray Engineering, P.C. v. Windermere

Properties LLC,  2013 WL 1809637, *4 (S.D.N.Y. 2013).  "[A]ll doubts must be resolved in

favor of trial on the merits".  Enron Oil Corp. v. Diakuhara,  10 F.3d 90, 98 (2d Cir. 1993).

I will address each of these factors.


**1.      Willfulness**

Willfulness under the good cause standard of Rule 55(c) is "conduct that is more

than merely negligent or careless".  S.E.C. v. McNulty, 137 F.3d 732, 738 (2d Cir.), cert. denied,

525 U.S. 931 (1998). "[T]he court may find a default to have been willful where the conduct of

counsel or the litigant was egregious and was not satisfactorily explained".  Id.

Defendants' counsel, George Zimmerman, Esq., has submitted a declaration

stating that Artus "diligently forwarded the Summons and Complaint along with the

Acknowledgment of Service" to the New York State Attorney General's Office and that the

failure of Artus to appear "is due solely to law office failure and , in particular, [counsel's]

oversight".  Zimmermann Declaration [28-2], ¶16.  He explains that upon receipt of the paper

-27-

file, he did not locate the request for representation from Artus or Adams.  <u>Id</u>., ¶7.  When he later

discovered the request for representation by Adams, he filed a motion to dismiss on his behalf,

but it  was not until plaintiff moved for entry of default and he went back through his paper file

and located the Acknowledgment of Service for Artus submitted on April 15, 2013.  <u>Id</u>., ¶¶12,

13.  While defendant's counsel attempted to draft a motion to dismiss the Complaint against

Artus before the default was entered, he was unable to do so.  <u>Id</u>., ¶14.

       This provides a sufficient explanation for me to I conclude that the default was not

willful.


    **2.**      **Prejudice**

       "Prejudice to the nondefaulting party is 'the single most persuasive reason for

denying a Rule 55(c) motion'".  <u>Id</u>. (*quoting* 10A Wright, Miller, *et al.*, <u>Federal Practice and</u>

<u>Procedure</u> §2699 (3d ed. 2010)).  Relying on the fact that Artus allegedly failed to respond to his

grievances, plaintiff argues that it would be prejudicial to permit him to do so "at this late stage"

of the action and will provide him "with greater opportunity for fraud for [*sic*] collusion with

more attempts to mislead the Court with misrepresentations of the factual allegations of

Plaintiff's complaint".  Plaintiff's Affidavit [30], ¶¶2, 13.

       However, this case is still at an early stage, and no discovery has occurred.

"Concededly, some delay will result if defendants' motion is granted.  Yet, delay alone is not a

sufficient basis for establishing prejudice . . . .  Rather, it must be shown that delay will result in

the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for

fraud and collusion." <u>Davis v. Musler</u>, 713 F.2d 907, 916 (2d Cir. 1983).  While plaintiff points

to possible collusion and fraud, these speculative claims are insufficient to establish prejudice.


       **3.**     **Meritorious Defense**

     "The test of such a defense is measured not by whether there is a likelihood that it

will carry the day, but whether the evidence submitted, if proven at trial, would constitute a

complete defense." <u>Enron Oil Corp.</u>, 10 F.3d at 98.  Although a meritorious defense may be

substantiated by the submission of evidence, it may also be established by the facial insufficiency

of the allegations of a Complaint.  *See* <u>Saunders v. Morton</u>, 269 F.R.D. 387, 403 (D.Vt. 2010)

("[A]llegations against Weber could be vulnerable to a Rule 12(b)(6) motion to dismiss for

failure to state a claim upon which relief can be granted . . . . On this basis, the 'meritorious

defense' factor supports Weber's request for relief").  Here, Artus relies upon the failure of the

Complaint to allege his personal involvement to establish a meritorious defense.  Artus'

Memorandum of Law [28-1], pp. 5-6.

     To the extent the Complaint alleges that Artus had plaintiff transferred to Collins

to "to forestall any potential equitable relief, such as the selection of the court-appointed

mediator to protect Plaintiff from further acts of retaliation" (Complaint [1], ¶75), Artus argues,

there is no allegation that this was done in retaliation for a protected activity.  Artus'

Memorandum of Law [28-1], p. 6.  Therefore, without prejuding any future motion to dismiss

that may be filed,  Artus has established that the claims against him may be subject to dismissal.

Considering these factors, and given the preference for resolving disputes on the merits, I conclude that  good cause exists to vacate the entry of default against Artus, and I therefore recommend that his motion be granted.

## CONCLUSION

For these reasons, plaintiff's motion to deny and/or strike [26] is denied, and I recommend that Artus' motion to vacate the entry of default [28] be granted and that defendants' motions to dismiss [15, 21] be granted, without prejudice, to the extent they seek dismissal of Fischer,  Kellner, the retaliation claims against O'Donnell and Dr. Bangsil, the retaliation claim against Hessell arising from the restricted diet order, due process claims against Kolpack and Eaton and the claims against Adams arising from the alleged false and defamatory Treatment Progress Report, but otherwise be denied.

Unless otherwise ordered by Judge Skretny, any objections to this Report, Recommendation and Order must be filed with the clerk of this court by March 3, 2014 (applying the time frames set forth in  Rules 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Skretny.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.


Dated:   February 14, 2014

                                          /s/ Jeremiah J. McCarthy
                                          JEREMIAH J. MCCARTHY
                                          United States Magistrate Judge