UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| TED JOHNSON, | **REPORT,** |
| | **RECOMMENDATION,** |
| | **and ORDER** |
| Plaintiff, | 12-CV-00343(S)(M) |
| v. | |
| BRIAN FISCHER, et al., | |
| Defendants. | |

_____

This case was referred to me by Hon. William M. Skretny for supervision of all pretrial proceedings, including the preparation of a Report and Recommendation on dispositive motions [16].[1] Before me is defendant Dale Artus' motion [38] to dismiss the Complaint pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6) and plaintiff's motion [40] for appointment of counsel. For the following reasons, plaintiff's motion is denied, without prejudice, and I recommend that Artus' motion be granted in part and denied in part.


**BACKGROUND**

I previously addressed the co-defendants' motions to dismiss the Complaint and vacated the entry of default against defendant Artus in my February 14, 2014 Report, Recommendation and Order [34], which was adopted by Judge Skretny [37]. Thereafter, in lieu of answering the Complaint, defendant Artus moved to dismiss the Complaint [38]. The parties' familiarity with the factual allegations of the Complaint, which are set forth in my earlier Report, Recommendation and Order [34] is presumed.

---

[1] Bracketed references are to the CM/ECF docket entries.

## ANALYSIS

**A.     Defendant Artus' Motion to Dismiss**

"When, as here, the complaint is filed by a *pro se* plaintiff, we construe the complaint liberally, interpreting it to raise the strongest arguments that it suggests." Caro v. Weintraub, 618 F.3d 94, 97 (2d Cir. 2010).  Moreover, "the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated".  Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991).

"Notwithstanding this rule, however, even when a plaintiff is proceeding *pro se*, all normal rules of pleading are not absolutely suspended." Johnson v. Connolly, 2008 WL 724167, *6 (N.D.N.Y. 2008).  Thus, where the problem with plaintiff's complaint is "substantive [and] better pleading will not cure it", leave to replead should be denied.  Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).  Moreover, leave to amend is "taken very seriously and with consideration that the Court need not allow unlimited efforts to state a claim".  Henry v. Cuomo, 2008 WL 489258, *3 (W.D.N.Y. 2008) (Telesca, J.).

As set forth in my earlier Report, Recommendation and Order [34], the Complaint [1] appears to assert the following four causes of action: First Cause of Action - retaliation for grievances filed against defendants Adams and Tietz;[2]  Second Cause of Action - Eighth Amendment violation for the cruel and unusual punishment associated with his confinement in

---

[2]     Defendants characterize the First Cause of Action of the Complaint as being "for retaliation, for transferring [plaintiff] to Collins".  Defendants' Memorandum of Law [38-1], p. 7.  However, plaintiff's First Cause of Action appears to concern retaliation in the form of his confinement in SHU for the grievances he filed against Adams and Tietz.

SHU based upon false charges; Third Cause of Action - Due Process violations arising from his Tier III disciplinary hearings; and Fourth Cause of Action - supervisory liability.

With respect to defendant Artus, the Superintendent of Gowanda Correctional Facility, the Complaint [1] alleges that plaintiff's attorney, Edward Land, Esq., "made Defendant Artus aware of another case where an inmate was allowed to proceed in federal court on very similar claims of retaliation . . . . [T]hus to forestall any potential equitable relief, such as the selection of the court-appointed monitor to protect Plaintiff from further acts of retaliation, Defendant Artus arranged, upon information and belief, to have Plaintiff transferred to Collins to preempt such equitable relief" (id., ¶75).

The Complaint also appears to allege that defendant Artus was personally involved in the conduct allegedly attributable to the co-defendants by alleging that plaintiff and Mr. Land submitted grievances and letters to defendant Artus, demanding his release from SHU and complaining of "the unlawfulness of the Tier III charge and the restricted diet order". Complaint [1], ¶¶33, 58, 72, 101.

1.    **Claims arising from Plaintiff's Transfer to Collins**

"Although a prisoner has no liberty interest in remaining at a particular correctional facility, prison authorities may not transfer an inmate in retaliation for the exercise of constitutionally protected rights." Amaker v. Fischer, 2014 WL 4772202, *9 (W.D.N.Y. 2014) (citing Davis v. Kelly, 160 F.3d 917, 920 (2d Cir. 1998)). Defendants argue that "absent an allegation that the transfer was for retaliatory reasons, and th[at] Artus was somehow involved in

the transfer (which is not specifically alleged), the transfer of the plaintiff from Gowanda to Collins fails to state a claim against Artus". Defendants' Memorandum of Law [38-1], pp. 9-10.

I agree with defendants that there is no allegation that plaintiff's transfer was retaliatory. Rather, plaintiff appears to allege that the transfer was arranged to preempt court intervention to stop the retaliation. To the extent plaintiff alleges that harassment and retaliation continued when he was transferred to Collins, there is no allegation that defendant Artus had any personal involvement in this conduct. Therefore, I recommend that this claim be dismissed.

### 2. Personal Involvement

#### a. First and Second Causes of Action

Liberally interpreting plaintiff's Complaint, he appears to allege that defendant Artus was personally involved in the first two causes of action for retaliation and cruel and unusual punishment by his receipt of various letters and grievances from plaintiff and his attorney complaining of the conduct at issue. Defendants argue that "to the extent that the plaintiff is asserting that Artus is liable based on th[ese] communications, and any failure to act on them . . . must be rejected" since "[i]t is established law that the mere receipt of correspondence or notification does not establish personal liability to establish a constitutional violation". Defendants' Memorandum of Law [38-1], p. 7.

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). "The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged

constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).[3]

Since §1983 liability cannot be predicated on a theory of *respondeat superior*, courts have regularly held that in satisfying the second and fifth Colon factors a defendant's "receipt of a letter or grievance, without personally investigating or acting on the letter or grievance, is insufficient to establish personal involvement". Burns v. Fischer, 2014 WL 1413387, *5 (N.D.N.Y.), adopted in relevant part 2014 WL 1413170 (N.D.N.Y. 2014) (citing cases). *See also* Ferrer v. Fischer, 2014 WL 1763383, *2 (N.D.N.Y. 2014) ("Courts in this circuit have frequently held that the mere receipt of letters from an inmate is insufficient to constitute personal involvement"); Terry v. Campbell, 2013 WL 5355107, *6 (N.D.N.Y. 2013) ("Although the Court of Appeals has expressly held that a supervisor can be held liable under § 1983 for a failure to remedy a wrong after being informed through a report or appeal . . . courts in

---

[3] I need not resolve whether all five of Colon's categories of conduct that may give rise to supervisory liability remain viable after Ashcroft v. Iqbal, 556 U.S. 662 (2009) since defendants argue that even if all five of the Colon factors remain, plaintiff has not alleged sufficient personal liability by defendant Artus. Defendants' Memorandum of Law [38-1], p. 7.

this district have repeatedly held that supervisory liability cannot be established by an official's failure to respond to grievance letters or requests for investigations from prisoners").[4]

Thus, "[i]t was once well accepted that . . . ignoring an inmate's letter [did not] constitute[] personal involvement on behalf of a supervisory official". Rucano v. Koenigsmann, 2014 WL 1292281, *11 (N.D.N.Y. 2014). Consequently, "district courts in this circuit . . . routinely held that a prisoner's allegation that a supervisory official failed to respond to a grievance is insufficient to establish that the official 'failed to remedy that violation after learning of it through a report or appeal' or 'exhibited deliberate indifference . . . by failing to act on information indicating that the violation was occurring.'" King v. McIntyer, 2014 WL 689028, *9 (N.D.N.Y. 2014).

However, in Grullon v. City of New Haven, 720 F.3d 133, 141 (2d Cir. 2013), the Second Circuit recently cautioned against dismissing claims at the pleading stage where the complaint contains allegations that an official failed to respond to a letter of complaint. In Grullon, the plaintiff's complaint lacked any allegations concerning the warden's personal

---

[4] "At first glance, these holdings might seem counter-intuitive, as giving supervisors an incentive to inaction in order to avoid personal liability. However, it must be noted that the Commissioner and individual prison Superintendents receive innumerable letters and other forms of inmate complaints and delegate subordinates to handle them . . . . Thus, if mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose *respondeat superior* liability." Walker v. Pataro, 2002 WL 664040, *12 (S.D.N.Y. 2002) (Report and Recommendation). *See* Grieco v. Fischer, 2013 WL 5488905, *5 (W.D.N.Y. 2013) (Skretny, J./ Schroeder, M.J.) ("To allow a mere letter to an official to impose supervisory liability would permit an inmate to place liability on individuals who had no authority over the situation complained of merely by sending letters").

involvement, but in opposition to the warden's motion to dismiss for lack of personal involvement plaintiff attached a copy of a letter he had written to the warden complaining of the alleged constitutional violations and requested an opportunity to amend the complaint. 720 F.3d at 136-37. In concluding that the district court erred in dismissing the plaintiff's claims on personal involvement grounds without granting him leave to file an amended complaint, the Second Circuit cautioned that "[a]t the pleading stage, even if [the plaintiff] had no knowledge or information as to what became of his Letter after he sent it, he would be entitled to have the court draw the reasonable inference if his amended complaint contained factual allegations indicating that the Letter was sent to the Warden at an appropriate address and by appropriate means that the Warden in fact received the Letter, read it, and thereby became aware of the alleged conditions of which Grullon complained." Id. at 141.

Grullon "turned on the fact that the issue arose in the context of [Rule] 12(b)(6), rather than [Rule] 56". Samms v. Fischer, 2013 WL 5310215, *5 (N.D.N.Y. 2013). The Second Circuit explained that "[i]t is of course possible that the Warden read the Letter and took appropriate action or that an administrative procedure was in place by which the Warden himself would not have received the Letter addressed to him; but those are potential factual issues as to personal involvement that likely cannot be resolved without development of a factual record". Grullon, 720 F.3d at 141.

Notwithstanding the Second Circuit's guidance in Grullon, a number of courts, including those I relied upon in my earlier Report, Recommendation, and Order [34] in dismissing defendants Lori Kellner and Brian Fischer for lack of personal involvement (id., pp. 11-12), have continued to recognize that allegations that letters or grievances were sent to

supervisory officials are insufficient to establish personal involvement at the pleading stage. *See e.g.*, Lowery v. City of New York, 2014 WL 2567104, *6 (S.D.N.Y. 2014) ("even if the Court assumes that a grievance was filed and received by Schriro, the mere receipt of grievances, without more, is insufficient to allege personal involvement for purposes of §1983"); Bessette v. Pallito, 2014 WL 1744265, *8 (D.Vt. 2014) ("A supervisory official having received (and ignored) a letter from an inmate alleging unconstitutional conduct does not, without more, give rise to personal involvement on the part of that official"); Alvarado v. Westchester County, 22 F.Supp.2d 208, 215 (S.D.N.Y. 2014) (the defendants' "mere receipt of Flavin's grievance, and their subsequent inaction, are insufficient to establish the personal involvement of these defendants"); Burns v. Fischer, 2014 WL 1413387, *5 (N.D.N.Y.), adopted in relevant part, Burns v. Fischer, 2014 WL 1413170 (N.D.N.Y. 2014) ("Merely writing letters and grievances to a defendant is insufficient to establish notice and personal involvement"); Rivera v. Evans, 2014 WL 4695803, *8 (S.D.N.Y. 2014) (same); Fredricks v. City of New York, 2014 WL 3875181, *11 (S.D.N.Y. 2014) ("Because the mere receipt of complaints or grievances is insufficient to impute personal involvement in a constitutional violation, Defendants' motion to dismiss Plaintiff's §1983 claims . . . is granted").

Nonetheless, I conclude that determination of whether personal involvement exists based on the receipt of a letter of complaint should not be resolved without the development of a factual record. *See, e.g.*, Jean-Laurent v. Lawrence, 2014 WL 1282309, *3 (S.D.N.Y. 2014) ("Jean-Laurent cannot be expected to know who opens mail addressed to Perez or who was responsible for deciding to withhold his legal papers. He knows that his legal papers were withheld, and he knows which prison officials he asked to fix the problem. This

information is alleged in the complaint, and it is enough to state a plausible claim that the individuals Jean-Laurent asked for help - including Perez - were personally involved"); Castro v. Heath, 2013 WL 5354241, *8 (N.D.N.Y. 2013) ("The only allegation against defendant . . . in plaintiff's complaint is that plaintiff sent defendant a grievance complaining that the Greene medical staff was not adequately responding to plaintiff's ear infection . . . . As recent Second Circuit case law makes clear, at the pleading stage, this is sufficient to allege the personal involvement of a superintendent of a prison facility"); Adeyemi v. Lightner, 2014 WL 580226, *6 (D.Conn. 2014); Rucano, 2014 WL 1292281 at *11 ("in light of the Second Circuit's recent decision in Grullon . . . , it would appear that plaintiffs within the Second Circuit are entitled to have the court draw the reasonable inference . . . that the [official] in fact received the Letter, read it, and became aware of the alleged conditions of which [the inmate] complained"); Jean-Laurent v. Lane, 2014 WL 5335981, *9 (N.D.N.Y. 2014) (same).[5]

        Accordingly, I recommend that defendants' motion be denied to the extent it seeks to dismiss defendant Artus from the First and Second Causes of Action for lack of personal involvement. I recognize that my recommendation may be inconsistent with the prior dismissal of defendants Kellner and Fischer for lack of personal involvement. However, "I see no reason why I should be consciously wrong today because I was unconsciously wrong yesterday". Dart Cherokee Basin Operating Co., LLC v. Owens, __ U.S.__, 135 S.Ct. 547, 561-62 (2014) (Scalia,

---

[5] Although Grullon suggested that a plaintiff must allege that the correspondence was sent to "an appropriate address and by appropriate means" 720 F.3d at 141, many of the post-Grullon decisions have not imposed this requirement. See Selah v. Fischer, 2013 WL 5603866, *3 (N.D.N.Y. 2013) ("defendants argue that the amended complaint 'does not allege that plaintiff sent Taylor anything, let alone when and how.' . . . This objection is without merit. Given the liberal pleading standard afforded to a *pro se* plaintiff, Selah is entitled to have the court 'draw the reasonable inference . . . that [Taylor] in fact received the [grievance], read it, and thereby became aware of the alleged conditions of which [Selah] complained'").

J., dissenting) (internal quotations omitted).   Therefore, if my recommendation is adopted, I will give the parties an opportunity to submit briefing on this issue.

### b. Third Cause of Action

With respect to the third cause of action alleging a due process violation arising from the Tier III disciplinary hearings, defendants argue that personal involvement is lacking since the "[f]ailure to respond to an appeal, or even deciding an appeal, does not state a claim under 1983". Defendants' Memorandum of Law [38-1], p. 8.  Since plaintiff's due process claims arising from the Tier III disciplinary hearings against the hearing offices (defendants Kolpack and Eaton) have been dismissed, it is unnecessary for me to determine whether defendant Artus had sufficient personal involvement in these alleged due process violations from his handling of the appeals from the Tier III determinations.

### B. Plaintiff's Motion for Appointment of Counsel

Plaintiff moves [40] for appointment of counsel, alleging that his former attorney Edward Land is deceased and that he has unsuccessfully attempted to retain another attorney (id., ¶¶3(a), (b)).  Relying on the earlier decision denying defendants' motion to dismiss the Complaint in part, he argues that "his case has merit" (id., ¶4).

There is no constitutional right to appointed counsel in civil cases. However, under 28 U.S.C. §1915(e), the Court may appoint counsel to assist indigent litigants. See, e.g., Sears, Roebuck & Co. v. Charles W. Sears Real Estate, Inc., 865 F. 2d 22, 23 (2d Cir. 1988).  The decision as to whether or not to assign counsel lies clearly within the court's

discretion. *See* In re Martin-Trigona, 737 F. 2d 1254, 1260 (2d Cir. 1984). The factors to be considered include the following: (1) whether the indigent's claims seem likely to be of substance; (2) whether the indigent is able to investigate the crucial facts concerning his claim; (3) whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder; (4) whether the indigent has the ability to present the case; (5) whether the legal issues involved are complex; and (6) whether there are any special reasons why appointment of counsel would be more likely to lead to a just determination. *See* Hodge v. Police Officers, 802 F.2d 58, 61-62 (2d Cir. 1986); Carmona v. United States Bureau of Prisons, 243 F. 3d 629, 632 (2d Cir. 2001).

Having considered these factors, I conclude that appointment of counsel is not warranted at this time. While some of plaintiff's claims have survived dismissal, this case remains at an early stage and the merit (or lack thereof) of plaintiff's claims is difficult to assess. Moreover, plaintiff has not shown that he is incapable of litigating his case. Therefore, plaintiff's motion for appointment of counsel is denied, without prejudice to his ability to re-apply for appointment of counsel at a later stage of the case.

However, at this time, it remains plaintiff's responsibility to retain an attorney or to prosecute this action *pro se*. 28 U.S.C. §1654. In order to assist plaintiff in pursuing this case *pro se*, the clerk of the court is directed to send plaintiff the court's booklet entitled "*Pro Se* Litigation Guidelines".

**CONCLUSION**

For these reasons, plaintiff's motion for appointment of counsel [40] is denied, without prejudice, and I recommend that defendant Artus' motion to dismiss [38] be granted to the extent it seeks to assert a claim against him for his transfer and for his alleged personal involvement in the alleged due process violations that occurred at his Tier III disciplinary hearings, but otherwise be denied. If my recommendation is adopted, I will set a briefing schedule to permit the parties to address whether reconsideration of the dismissal of the claims against defendants Kellner and Fischer is warranted.

Unless otherwise ordered by Judge Skretny, any objections to this Report, Recommendation and Order must be filed with the clerk of this court by March 2, 2015 (applying the time frames set forth in Rules 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Skretny. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying

that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: February 13, 2015

                                                /s/ Jeremiah J. McCarthy
                                                JEREMIAH J. MCCARTHY
                                                United States Magistrate Judge